**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                  Case No. 06-CR-20346

GARY LEE DAILEY,

    Defendant.
                                        /

**ORDER ON GOVERNMENT'S OBJECTION TO**
**PRESENTENCE REPORT CALCULATION**

This matter is before the court in preparation for sentencing. The court has received sentencing briefs from both parties and held a hearing on January 4, 2007. The court heard argument regarding sentencing and granted Defendant's motion to withdraw the Rule 11 agreement and to continue with his guilty plea. At the hearing, the court stated that it would further explore and decide in a written opinion whether the career offender provision of the federal Sentencing Guidelines should apply to Defendant. The government objects to the probation officer's suggestion in the pre-sentence report that the career offender provision should not apply to Defendant. For the reasons discussed below, the court will overrule the government's objection and conclude that Defendant is not a career offender.

**I.  BACKGROUND**

Defendant robbed five separate Detroit and Ypsilanti-area banks in May 2006, stealing a total of $9,312 by presenting a note claiming that he had a firearm and wanted money. Authorities apprehended and indicted Defendant, who pleaded guilty on June 28, 2006 to all five counts of bank robbery in violation of 18 U.S.C. § 2113(a).

Defendant has a number of prior criminal convictions and the two most relevant, for purposes of this opinion and order, are unarmed robbery and breaking and entering with intent to commit a felony or larceny therein.

## II. STANDARD

In *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. The Supreme Court applied this rule to state sentencing guidelines in *Blakely v. Washington*, 542 U.S. 296 (2004). The *Blakely* Court specified that the "'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Id.* at 303 (emphasis in original). The Court found that the defendant's enhanced sentence issued under the State of Washington's sentencing procedures violated the Sixth Amendment based on the rule in *Apprendi*. *See id.* at 305-306.

The United States Supreme Court has held that the rule set forth in *Blakely* applies to the United States Sentencing Guidelines. *United States v. Booker*, 543 U.S. 220 (2005). More specifically, the *Booker* Court applied the principles in *Blakely* to hold that the Sentencing Guidelines were unconstitutional insofar as they mandated that a defendant's sentence be increased based on facts not found by the jury beyond a reasonable doubt. *Id.* at 243-44. To remedy this constitutional violation, the Court severed two sections of the Sentencing Reform Act (the "SRA"), making the Sentencing

Guidelines effectively advisory.  *See id.* at 244-264 (severing and excising 18 U.S.C. § 3553(b)(1) & § 3742(e)).

The *Booker* Court recognized that the Supreme Court has "never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range."  *Booker*, 543 U.S. at 233 (citing *Apprendi,* 530 U.S. at 481; *Williams v. New York,* 337 U.S. 241, 246 (1949)).  The Court also found that it was the mandatory nature of the Sentencing Guidelines which made them incompatible with the Sixth Amendment.  *See id.* at 259 ("Without this provision--namely the provision that makes 'the relevant sentencing rules . . . mandatory and impose[s] binding requirements on all sentencing judges'--the statute falls outside the scope of *Apprendi's* requirement"); *see also id.* at 233 ("[E]veryone agrees that the constitutional issues presented by these cases would have been avoided entirely if Congress had omitted from the SRA the provisions that make the Guidelines binding on district judges.").  This is why the Court chose to remedy the constitutional violation by rendering the Guidelines *advisory* rather than *mandatory*.  Thus, district courts may still consider the same evidence, and make the appropriate findings, under the applicable Sentencing Guidelines; once the applicable range is determined, however, the court must determine in its discretion whether this range is appropriate, after considering all the other factors in § 3553(a).  *United States v. Oliver*, 397 F.3d 369, 380 n.3, 382 n.5 (6th Cir. 2005); *see also United States v. Jamieson*, 427 F.3d 394, 417 (6th Cir. 2005) ("As the *Booker* [C]ourt explained however, the district court must take the recommended guidelines into account when re-sentencing [the defendant]."); *United States v. McDaniel*, 398 F.3d 540 (6th Cir. 2005) ("Although the *Booker* Court severed and rendered inapplicable 18 U.S.C. § 3553(b)(1)

3

and 3742(e), which made adherence to the Guidelines mandatory, the *Booker* Court also explained that sentencing courts should continue to consider the recommended Guidelines sentence.").

The court thus may make findings of fact which may result in sentencing enhancements. The court will follow a "preponderance of the evidence" standard to make the relevant findings of fact. *See United States v. Yagar*, 404 F.3d 967, 972 (6th Cir. 2005) ("[A] finding under the Guidelines must be based on reliable information and a preponderance of the evidence."); *see also Coleman*, 370 F. Supp. 2d at 667-68 ("[M]ost courts agree that judicial fact-finding [post-*Booker*] may be made by a preponderance of the evidence so long as the court is operating in an advisory regime.") (citing *Cirilo-Munoz v. United States,* 404 F.3d 527, 532-33 (1st Cir. 2005); *Guzman v. United States,* 404 F.3d 139, 143 (2d Cir. 2005); *United States v. Mares,* 402 F.3d 511, 519 (5th Cir. 2005); *Yagar,* 404 F.3d at 972; *McReynolds v. United States,* 397 F.3d 479, 481 (7th Cir. 2005)).

### III.  DISCUSSION

#### A.  Applicable Guideline Range

The parties dispute whether the guideline range for Defendant's sentence should be enhanced pursuant to the following career offender provision:

> (a) A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1. The parties dispute only the third element, the meaning of "crime of violence" and its application to Defendant's conviction under Mich. Comp. Laws §

4

750.110 for breaking and entering with intent to commit a felony or larceny therein. The parties agree that Defendant's other conviction, for unarmed robbery, does qualify as a crime of violence. The Sentencing Guidelines define "crime of violence" as:

> any offense under federal or state law punishable by imprisonment for a term exceeding one year that-(I) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (ii) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(1). Defendant contends that the specific language "burglary of a dwelling" excludes his conviction of breaking and entering with intent. According to the felony information filed by the state prosecutor, Defendant "did break and enter a pizzeria, located at 51390 Willis Rd, with the intent to commit the crime of larceny . . . ." (12/12/01 Felony Information, Def.'s Ex. A.)[1]

The Sixth Circuit provides useful guidance in *United States v. Wilson*, 168 F.3d 916 (6th Cir. 1999). In *Wilson*, the Sixth Circuit considered whether *under the Sentencing Guidelines* an Illinois burglary conviction qualified as a crime of violence, adopting the standard set forth below and remanding to the district court for application. *Id.* at 926-29. It noted that the Courts of Appeal "are split over whether burglary of a building that is not a dwelling is a 'crime of violence' under the Sentencing Guidelines." *Id.* at 926 (citations omitted). The Sixth Circuit settled on an approach that rejected

---

[1] The court is aware of *United States v. Fish*, 928 F.2d 185 (6th Cir. 1991), *cert den* 502 U.S. 834 (1991), and finds that in this case it has limited application, if any. *Fish* affirmed enhancement of a sentence pursuant to 18 U.S.C. § 924(e)(1), based upon the conclusion that a conviction for the same offense under Mich. Comp. Laws § 750.110 is a violent felony according to 18 U.S.C. § 922(e)(2)(B). The statutory framework in *Fish*, however, references mere "burglary" without further limitation as opposed in this case to the Sentencing Guideline's language of "burglary of a dwelling."

defining such a crime as violent *per se* but "that burglary of a non-dwelling may, under certain circumstances, be considered a crime of violence under [U.S.S.G. § 4B1.2(1)(ii)]'s 'otherwise clause.'" *Id.*

The *Wilson* court, relying upon the language of the Sentencing Guidelines and its commentary, listed three ways in which a prior conviction could be considered a crime of violence: (1) the prior conviction is specifically enumerated, (2) though not specifically enumerated, the conviction is for a crime that has as an element of the offense the use, attempted use, or threatened use of physical force against another and (3) although neither enumerated nor involving physical force as an element of the offense, the conviction is for a crime that involves conduct posing a serious potential risk of injury to another. *Id.* at 927. As in *Wilson*, this case does not involve a specifically enumerated felony conviction. The *Wilson* court concluded that the Illinois conviction did not fall under the second category either. According to the relevant Illinois statute, "[a] person commits burglary when without authority he knowingly enters or without authority remains within a building, house, trailer, water craft, air craft, motor vehicle . . . , railroad car, or any part thereof, with intent to commit therein a felony or theft." *Id.* (citation omitted). Although the enumerated places included "house[s]," the Illinois statute specifically excluded "residential burglary." *Id.* (citation omitted). The circuit court concluded that the Illinois conviction did not contain as an element the use, attempted use or threatened use of physical force against another. *Id.* Finally, under the third inquiry, the circuit court concluded that burglary of a non-dwelling may involve conduct posing a serious potential risk of injury to another and remanded to the district court for

a specific determination because the indictment for that offense was not part of the appellate record. *Id.* at 927-29.

Defendant's conviction is not precisely the same as the Illinois conviction that the Sixth Circuit considered in *Wilson*. According to the Michigan statute, "[a] person who breaks and enters, with intent to commit a felony or larceny therein, a tent, hotel, office, store, shop, warehouse, barn, granary, factory or other building, structure, boat, ship, or railroad car is guilty of a felony, punishable by imprisonment for not more than 10 years." Mich. Comp. Laws. § 750.110.[2]  The difference is that unlike the Illinois statute, the Michigan statute does not specifically exclude "residential burglaries" from its reach. Indeed, its two first two enumerated places, a tent and hotel, are places where people may dwell, at least temporarily. Further, the catch-all language of the Michigan statute, "other building [or] structure," is certainly broad enough to include a place of abode. But while the statute *may* include dwellings, it does not *necessarily* include them as an element of the offense. As such, Defendant's breaking and entering conviction is not a specifically enumerated felony for purposes of finding a violent felony conviction under the Sentencing Guidelines.

Further, Defendant's conviction does not qualify as a violent felony based upon the elements of the offense. Those elements do not include, as the Sentencing Guidelines require, the use, attempted use, or threatened use of physical force against

---

[2]A separate Michigan statute, Mich. Comp. Laws § 750.110a, proscribes breaking and entering into a dwelling and home invasion, with sentence maximums ranging from five to twenty years depending on the severity of the offense. It appears, therefore, that Michigan's prosecutors have discretion to charge breaking and entering of a place of abode under either Section 110's "other building" provision, or under 110a's specific coverage of a "dwelling."

7

another.  Instead, the language of the statute is limiting to breaking and entering certain places with intent to commit a felony or larceny therein.  While breaking by definition includes application of some physical force, the force contemplated is directed at the place entered and, importantly, not at a person or "another."  The question must therefore turn upon the final possible criterion: whether the conviction is for a crime that involves conduct posing "a serious potential risk of injury to another."  In making this determination, the court must take a categorical approach:

> a district court determining whether a prior offense constitutes a crime of violence is limited in its inquiry to an examination of the statutory elements of the defendant's prior offense. If the statute does not clearly establish that the offense involves the "use, attempted use, or threatened use of physical force," the court may then look at the charge in the indictment to which the defendant pled guilty or was adjudged guilty to determine if the offense involved a serious potential risk of physical injury to others. In the case of a guilty plea, the district court may also consider the plea agreement relating to the prior offense.

*United States v. Arnold*, 58 F.3d 1117, 1124 (6th Cir.1995) (citing *Taylor v. United States*, 495 U.S. 575 (1990)).  The court must therefore rely upon the four corners of the charging document that led to Defendant's conviction, and will not consider additional information about the conviction (particularly not the specific time of the break-in as focused upon by Defendant in his argument).

The charge in the indictment for which Defendant was convicted is breaking and entering into a place of business -- a pizzeria was specifically averred in the indictment -- with intent to commit the crime of larceny.  Whenever and however that crime occurred, the question is whether a burglary of a business place generically poses "a serious potential risk of physical injury to another."

8

Because they are open, often "wide-open," and the public at large is invited to enter when business is being conducted, business places are seldom broken into during ordinary business hours. Indeed, an interesting question would be presented if such a "break-in" were to be alleged: it is conceptually possible to "break into" a place that is already open to the public? The court observes that burglars who break into businesses nearly always wait until after the business has closed, e.g., on a weekend or during the nighttime; further, the court observes, when closing has occurred the people associated with running the business are ordinarily absent from the premises. There are, of course, exceptions, but this generally-known fact substantially distinguishes business break-ins from residential break-ins, wherein a burglar can never be entirely sure if someone is at home even if the house is dark. The high risk and potentially fatal consequences of a criminal encountering a sleeping occupant in his residence is obvious. Breaking into a business after hours, intending to steal something of value, poses no similar threat of injury to customers who are not there, nor any potential safety-related consequence to absent employees or owners.

In an era of fairly ubiquitous burglar alarms, the court must note some degree of threat of injury to responders, either civilian or official, for several reasons. The court assumes the common burglar's desire to go unnoticed and to leave the scene of the crime with some haste, whether an alarm is blaring or not. This raises some possibility of causing physical injury to anyone who might obstruct escape or give chase. *See United States v. Martin*, 378 F.3d 578, 582-84 (6th Cir. 2004) (holding that third degree fleeing and eluding in a car in violation of Michigan law presents a serious potential risk of physical injury to another); *see also United States v. Richardson*, 437 F.3d 550, 555-

9

56 (6th Cir. 2006); *United States v. Foreman*, 436 F.3d 638, 642 (6th Cir. 2006) (remanding for resentencing to consider whether fourth degree fleeing and eluding poses a serious potential risk to others). Actual injury or violence is not necessary, of course, only a serious potential risk of physical injury. *United States v. Sanders*, 470 F.3d 616, 622 (6th Cir. 2006) (holding that possessing a weapon while fleeing a theft poses a serious risk to others).[3]

The court concludes, however, that on balance the propensity for violence inherent in breaking and entering into a common business place is not manifest, and therefore does not constitute a *serious* potential risk. For these reasons, breaking and entering a business to commit larceny, at least under the circumstances presented here,[4] is not a crime that involves conduct that poses a serious potential risk of injury to another.

---

[3] *Sanders* stressed the presence of the weapon and rejected the argument that under some limited circumstances possessing a dangerous ordnance such as a firearm muffler might not present a potential risk of injury. *United States v. Sanders*, 470 F.3d 616, 622 n.5 (6th Cir. 2006). Not surprisingly, the Sixth Circuit did not go so far as to say (in what certainly would have been non-binding dicta even if stated) that the absence of a weapon would necessarily eliminate the risk. Nor is this court aware of any Sixth Circuit opinion holding that absence of a weapon *necessarily* means that a crime charged -- breaking and entering, fleeing and eluding or otherwise -- did *not* pose a serious potential risk of physical injury to others. Here, Defendant was not charged, as Sanders was, with a crime involving possession of a weapon. The absence of a weapon, either charged or actually possessed, in this case confirms that *Sanders* is not dispositive of the question.

[4] Those circumstances include the absence of any particularized averments in the charging document or statements in a plea agreement or matters in the record that might otherwise illuminate a serious risk of danger to another. *Arnold*, 58 F.3d at 1124. For example, it is conceivable, although perhaps not likely, that a prosecutor could use Mich. Comp. Laws § 750.110 to charge a burglary of a residence, see footnote 2, *supra,* specifying in the information that an occupied residence was the object of the crime. A conviction under those circumstances would present a different -- and much closer -- question than does the pizzeria burglary in this case.

Because Defendant has only one prior felony conviction for a crime of violence, the court may not enhance the guideline range for his sentence pursuant to the career offender provision.  U.S.S.G. § 4B1.1.

### IV.  CONCLUSION

IT IS ORDERED that the government's objection to the presentence investigation report is OVERRULED.

 S/Robert H. Cleland  
ROBERT H. CLELAND  
UNITED STATES DISTRICT JUDGE

Dated:  February 23, 2007

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, February 23, 2007, by electronic and/or ordinary mail.

 S/Lisa Wagner  
Case Manager and Deputy Clerk  
(313) 234-5522

S:\Cleland\JUDGE'S DESK\C2 ORDERS\06-20346.DAILEY.CrimeofViolenceObjection.wpd